# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10-20299 |
| ) | |
| **DARNELL MITCHELL,** ) | |
| ) | |
| Defendant. ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S AMENDED MOTION TO SUPPRESS

Before the Court is Defendant Darnell Mitchell's ("Mitchell") September 6, 2011 Amended Motion to Suppress. (ECF No. 41 ("Am. Mot.").)[1] The United States of America (the "Government") responded in opposition to Mitchell's Amended Motion on September 25, 2011. (Resp. of the United States to Def.'s Am. Mot. to Suppress, ECF No. 46.) On March 1, 2012, the Magistrate Judge issued her Report and Recommendation, recommending that the Court deny Mitchell's Amended Motion. (Report and Recommendation, ECF No. 122 ("Report").) Mitchell objected on March 15, 2012. (Objections to Magistrate Court's Report and Recommendation, ECF No. 71 ("Objection").) The Government responded on March 19, 2012. (Govt.'s Resp. to

---

[1] The Amended Motion to Suppress adds details to the July 1, 2011 Motion to Suppress (ECF No. 28), but makes no new arguments.

Def.'s Objections, ECF No. 72.) For the following reasons, the Court ADOPTS the Report and Recommendation of the Magistrate Judge. The Amended Motion to Suppress is DENIED.

**I.  Background**

On April 27, 2010, Jacqueline Fiveash ("Fiveash") drove her parents' Chrysler Sebring, without their permission, from Olive Branch, Mississippi, to Memphis, Tennessee, to acquire narcotics. (Dec. 2, 2011 Tr. 34-35, ECF No. 68.) In Memphis, Fiveash met her friend Martha and a man she did not know. (Id. 34.) Because she did not have a driver's license, she let the unknown man drive her vehicle, with her in it, to buy cocaine. (Id. at 34.) They picked up Mitchell and other individuals and drove around south Memphis doing cocaine. (Id. 39.) After everyone but Fiveash, the unknown man, and Mitchell had left the car, Mitchell began to drive. (Id. 40.) When Fiveash objected, he flashed a gun at her. (Id. at 40.) The three of them continued to drive around south Memphis using cocaine. (Id. at 43.) Whenever Mitchell stepped out of the car, he took the keys with him. (Id. 60.) They continued for several hours, until it became dark. (Id. 60-61.) While they drove, shots were fired at the vehicle, and Mitchell also fired his gun. (Id. 58.) It is unclear whether Mitchell fired first or in response to the shots fired. (Id. 69-70.)

The same evening, Lieutenant Durant D. Martin ("Lieutenant Martin") was patrolling in south Memphis near Riverside and Riverview Park. (October 24, 2011 Tr. 8, 16, 43, ECF No. 62.) He was there because of a "high incidence of robberies and burglaries and aggravated assault." (Id. 8.) Lieutenant Martin testified that, just before 11:00 P.M., as he was responding to an officer call for help near Kansas and Person, he saw a vehicle operating with its headlights off going in the opposite direction. (Id. 9.) After responding to the officer's call for help, Lieutenant received a "shots fired call" for the area toward which he saw the vehicle going. (Id.) When he responded, he saw the same vehicle with its headlights off parked in the middle of an intersection, blocking traffic. (Id. 9-10.)

Lieutenant Martin decided he needed to stop the vehicle because it was not using headlights, was blocking the intersection, and was in the area identified in the shots fired call. (Id. 38.) He turned on his vehicle's emergency lights, but the other vehicle left the intersection and made two left turns before stopping. (Id. 10.) As he approached the car, Lieutenant Martin observed the driver moving erratically, "as if he was trying to hide something." (Id. 11.)

On the same evening, Officer Matthew Biggs ("Officer Biggs") of the Memphis Police Department was assigned to Airways

3

Station, Delta Shift, in southeast Memphis, from 5:00 P.M. to 1:00 A.M. (Id. 54-55.) He joined Lieutenant Martin at the scene. (Id. 55.) Office Biggs also observed the driver "making a lot of movements." (Id. 56.) He saw the passenger, Fiveash, "kind of reaching down between her legs towards the floor of the car." (Id. 57.) When the officers removed Fiveash from the car, they saw a semiautomatic on the vehicle's floor under the passenger seat. (Id. 57-58.) Officer Biggs detained Fiveash to ensure the weapon was not accessible and then seized the weapon. (Id. 58.)

When Mitchell stepped out of the vehicle, Lieutenant Martin noticed that his eyes were bloodshot and that he smelled of alcohol. (Id. 22.) Mitchell was placed in Officer Biggs' vehicle. (Id.) Once there, Mitchell began "yelling, kicking, [and] spitting." (Id. 59.) The officers had to use a chemical agent to subdue him. (Id. 13.) Mitchell was handcuffed and his feet were restrained to prevent him from kicking the vehicle's door. (Id. 13-14.) An ambulance was called to determine whether Mitchell had any injuries, but he refused treatment. (Id. 41.) While the police were at the scene with Mitchell, an individual approached Lieutenant Martin and said that Mitchell had robbed him. (Id. 46.)

Officer Thomas Edwin Avery ("Officer Avery") arrived on the scene at 12:15 A.M. (Dec. 2, 2011 Tr. 14.) When he arrived, he

4

observed Mitchell "exhibiting resistant behavior." (Id.) Mitchell was moved from Officer Biggs' vehicle to Officer Avery's, and Avery transported Mitchell to the Shelby County Criminal Justice Complex. (Id. 14, 15.)

Mitchell was initially charged with "traveling while license revoked, cancelled, suspended, driving under the influence, reckless driving, resisting official detention, unlawful carrying, in possession of a weapon, [and] vandalism over $500." (Oct. 24, 2011 Tr. 29-30.) He was not charged with driving without headlights. (Id. 30.)

At 11:00 AM on April 29, 2010, thirty-six hours after Mitchell's arrest, Sergeant Veronica Wimbley ("Sergeant Wimbley") of the Memphis Police Department's Robbery Bureau requested a detective visit with Mitchell to investigate a robbery that had occurred on April 24, 2010. (Id. 80-81.) Sergeant Wimbley testified that, on April 29, Mitchell did not appear intoxicated. (Id. 83, 87.) Sergeant Wimbley advised Mitchell of his rights, and he signed an Advice of Rights Form. (Id. 83-84.) Mitchell marked yes and initialed each question on the form. (Id. 85-86) The form was signed by Mitchell, Sergeant Wimbley, and another officer. (Id. 86.)

Sergeant Wimbley interviewed Mitchell again at 12:30 P.M. on April 29. (Id. 89-90.) Sergeant Wimbley informed Mitchell of his rights under Miranda before that interview as well.

5

(Id.) Mitchell again initialed each question. (Id. 90.) Sergeant Wimbley "took [her] time with him because he seemed to want to say a lot . . . because it's his life on the line." (Id.) Mitchell gave his statement until 3:06 P.M., at which point he signed and dated his statement. (Id. 91.) He was offered food, water, and restroom breaks. (Id. 116.)

Mitchell asserts in his Amended Motion that: 1) there was no justification to stop the car, 2) the search was a violation of his Fourth Amendment rights, and 3) his statements were involuntary due to his mental health issues and recent intoxication. (Am. Mot 1-2.) The Magistrate Judge concluded that Mitchell did not have a legitimate expectation of privacy in Fiveash's parents' vehicle and, therefore, that there was no Fourth Amendment violation. (Report 12.) The Magistrate Judge also concluded that Mitchell's mental state was not so impaired as to make him misunderstand his Miranda rights and that he voluntarily and freely waived those rights. (Id. 15.) Based on her conclusions, the Magistrate Judge recommended that the Amended Motion to Suppress be denied. (Id. 16.) Mitchell now objects.

**II. Review of Report and Recommendation**

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." United States v. Quinney, 238 F.

6

App'x 150, 152 (6th Cir. 2007) (citations omitted). The district court need not review—under a de novo or any other standard—those aspects of a magistrate judge's report and recommendation to which no specific objection is made. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985); United States v. Robinson, 352 F. App'x 27, 28-29 (6th Cir. 2009).

**III. Analysis**

Mitchell objects to the report because: 1) the officers did not have a lawful ground to stop the vehicle; 2) the totality of the circumstances indicated that he had a reasonable expectation of privacy in the vehicle; and 3) that his statements were illegally obtained.

**A. Whether Lawful Grounds Existed to Stop the Vehicle**

The Magistrate Judge concluded that there was probable cause to stop the vehicle because it was pulled over for violating Tenn. Code Ann. § 55-9-406(a), which requires a motor vehicle's headlights to be on "from one half (1/2) hour after sunset to one half (1/2) hour before sunrise." (Report 10.) Mitchell was ultimately charged with reckless driving in violation of Tenn. Code Ann. § 55-10-205, which provides that a party is guilty of reckless driving if he "drives any vehicle in willful or wanton disregard for the safety of persons or property." Mitchell argues that the stop was unlawful because the Memphis Police Department never charged him with violating §

7

55-9-406(a). (Objection 2.) He also argues that none of the police reports contained any information about the "shots fired call", although it was allegedly the reason for the stop. (Id.)

Police may stop a vehicle so long as probable cause exists to believe a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996). "Even the fact that a reasonable officer might not have stopped the vehicle for the alleged violation is not enough to make a stop illegal, as long as the officer actually observed the traffic violation alleged to be the basis for the stop." United States v. Draper, 22 F. App'x 413, 414 (6th Cir. 2001). There is no requirement that the traffic violation form the basis for the ultimate arrest; the arrest may be on "charges wholly unrelated to the basis for the stop." Whren, 517 U.S. at 811.

Lieutenant Martin observed the vehicle being driven without headlights and parked in the middle of the intersection. (October 24, 2011 Tr. 9-10.) This first-hand observation established probable cause that Mitchell was violating both Tenn. Code Ann. §§ 55-9-406(a) and 55-10-205. Probable cause gave Lieutenant Martin the constitutional authority to stop the vehicle. See, e.g., United States v. Smith, 421 F. App'x 572, 574-5 (6th Cir. 2011)(probable cause was established when an officer observed a vehicle turning without a turn signal); United States v. Miller, 413 F. App'x 841, 843 (6th Cir. 2011)

(same). "Even if [Mitchell's] traffic violations were merely a pretext for the stop, they would have provided [Lieutenant Martin] with probable cause, rendering the stop lawful." Bazzi v. City of Dearborn, 658 F.3d 598, 603 (6th Cir. 2011).

Mitchell relies on the fact that the police reports "did not contain any information about a 'shots fired' call, even though it was allegedly the reason for the stop." (Objection 2.) Mitchell's argument is best understood as an attack on the officers' credibility and a contention that they did not have probable cause at the time of the stop. "When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Bermudez, No. 99-6097, 2000 U.S. App. LEXIS 33159, at *8-9 (6th Cir. Dec. 11, 2000) (citing United States v. Raddatz, 447 U.S. 667, 675-76 (1980)). "Credibility determinations of the magistrate judge who personally listened to the testimony . . . should be accepted unless in [its] de novo review of the record [the district court] finds a reason to question the magistrate judge's assessment." United States v. Johnson, No. 10-20176, 2011 U.S. Dist. LEXIS 97577, at *6-7 (W.D. Tenn. Aug. 30, 2011) (citations omitted).

Both Officer Biggs and Lieutenant Martin testified that they responded to a "shots fired" call in the area. (Oct. 24, 2011 Tr. 8, 55.) Lieutenant Martin testified that the vehicle Mitchell was driving was the same silver vehicle he had seen earlier. (Id. 10, 17.) Officer Biggs testified that the call indicated the vehicle was a "silver two-door car." (Id. 55.) The officers' testimonies are consistent. Courts may conclude that the "consistency of two officers' accounts" indicates that their statements are credible. United States v. Garrido, 476 F.3d 971, 979 (6th Cir. 2006); see also United States v. Simmons, 174 F. App'x 913, 917 (6th Cir. 2006) (finding officers' testimony credible because it was substantively consistent); United States v. Craft, 150 F. App'x 413, 416 (6th Cir. 2005) (finding officers credible because they "testified consistently, one with the other."). The officers' testimony was credible, and there was probable cause to stop the automobile Mitchell was driving.

**B. Whether Mitchell Had a Reasonable Expectation of Privacy**

Mitchell argues that he had a reasonable expectation of privacy in the vehicle. (Objection 2.) He contends that the Magistrate Judge erroneously relied on Fiveash's testimony that he threatened her because Fiveash's testimony is incredible given that she "was snorting cocaine and drinking alcohol." (Id. 3.) He also contends that Fiveash could have left her

10

parents' car at any time and that she consented to his driving it. (Id. 3.) Thus, Mitchell concludes that he was "reasonable in believing he had permission to drive the vehicle by the time the police approached the vehicle." (Id.)

To challenge the legality of a search by a law enforcement officer, a defendant must have a "legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978). "[A]s the Supreme Court held in Illinois v. Rakas [sic], passengers do not have a reasonable expectation of privacy in a searched vehicle." United States v. Torres-Ramos, 536 F.3d 542, 549 (6th Cir. 2008). Mitchell's basis to challenge the search is that he was driving the vehicle at the time of the stop. "[A]s a general rule, an unauthorized driver of a [] vehicle does not have a legitimate expectation of privacy in the vehicle, and therefore does not have standing to contest the legality of a search of the vehicle." United States v. Smith, 263 F.3d 571, 586 (6th Cir. 2001). This is not a bright line test, but a court should consider whether it "was [] illegal for [the defendant] to possess or drive [the] vehicle." Id. at 586-87. "Permission from the authorized driver . . . may be sufficient." Id. at 586. Otherwise, "[a] defendant has no legitimate expectation of privacy in a stolen vehicle, and thus has no standing to contest a warrantless search of the vehicle." United States v. Ott, No. 99-3300, 2000 U.S. App. LEXIS 22405,

11

at *8 (6th Cir. Aug. 28, 2000); accord United States v. Baker, 221 F.3d 438, 442 (3d Cir. 2000).

Fiveash testified that Mitchell started driving without her permission. (Dec. 2, 2011 Tr. 40.) She testified that he flashed a gun at her when she tried get into the driver's seat. (Id.) Although she could have escaped from the vehicle, she "didn't want anything to happen to [her] parents' car." (Id. 41.) Mitchell kept the car's keys on him at all times, even when he stopped the vehicle. (Id. 60.) The Magistrate Judge, who "had the opportunity to observe [Fiveash's] testimony and assess [her] demeanor," found her credible. Moss v. Hofbauer, 286 F.3d 851, 868 (6th Cir. 2002). The Court agrees. Mitchell flashed a gun at Fiveash and confiscated the vehicle's keys when she attempted to drive. He usurped control of the vehicle to drive it. Without Fiveash's authority, he had no expectation of privacy.

Even if Fiveash had consented to Mitchell's driving the vehicle, he had no legitimate expectation of privacy. "Legitimation of expectations of privacy by law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Rakas, 439 U.S. at 14 n.12. Even assuming Fiveash had consented, Mitchell did not have a right of privacy in a car that Fiveash did not own.

12

This matter "is closely analogous to the typical unauthorized driver of a rental car, whom the Sixth Circuit noted in Smith is without a legitimate expectation of privacy in the vehicle." United States v. Paredes-Lima, 493 F. Supp. 2d 958, 965 (S.D. Ohio 2005). Courts uniformly hold that "[a]n authorized driver on the rental agreement has lawful possession of the vehicle, and, within the scope of the rental agreement, may legitimately exclude others from using it." United States v. Kennedy, 638 F.3d 159, 165 (3d Cir. 2011). In contrast, a driver given permission by the renter, who has no authority to let others use a vehicle, "has no cognizable property interest in the rental and therefore no accompanying right to exclude. The lack of such an interest supports the position that it is objectively unreasonable for an unauthorized driver to expect privacy in the vehicle." Id.

Mitchell had no information about the ownership of the vehicle or Fiveash's authority to drive it. The vehicle could have been owned by Fiveash or "some 'unrelated third party,' about whom [Mitchell] could provide little or no information." Smith, 263 F.3d at 586. Mitchell had no ties to the vehicle's owner; he had never met Fiveash's parents, and he had never met her before April 27. He had no expectation of privacy in a stranger's car. Mitchell has "failed to meet his burden in showing that he had a reasonable expectation of privacy" in the

area searched.  United States v. Berryhill, 352 F.3d 315, 316 (6th Cir. 2003).

**C. Whether Statements Were Unlawfully Obtained**

Mitchell argues that his statements were unlawfully obtained because of his "mental deficits and reduced intellectual functioning" and his recent intoxication. (Objection 4.)

A waiver of Miranda rights "'must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Moran v. Burbine, 475 U.S. 412, 421 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)).  The court looks at the totality of the circumstances to decide whether a waiver was knowing and voluntary.  Garner v. Mitchell, 557 F.3d 257, 263 (6th Cir. 2009).

Sergeant Wimbley testified that Mitchell appeared calm and showed no signs of intoxication when spoke to him thirty-six hours after his arrest.  (Oct. 24, 2011 Tr. 83.)  Mitchell informed Sergeant Wimbley that he was not intoxicated and that he took no medications regularly.  (Id. 117.)  Mitchell was read his rights by Sergeant Wimbley, read them aloud, and then signed an Advice of Rights Form.  (Id. 84-87.)  He signed another at 12:30 P.M.  (Id. 89-90.)  Sergeant Wimbley testified that she goes through the Advice of Rights Form to "make sure

14

[defendants] understand . . . what a lawyer is and what certain terms mean even though they say they may know." (Id. 113.)

Mitchell also underwent a mental health evaluation, which determined that he had no problems understanding staff. (Report 14.) Although the evaluation indicated that Mitchell had borderline intellectual function, it noted that he "'over-reported a number of various psychiatric symptoms. Further, his report of hallucinations was inconsistent with observations of his overt behavior.'" (Id. 15 (quoting Def. Ex. 9 at 11-12.)) The report also noted that Mitchell's intellectual disorder was not sufficiently severe to constitute a mental defect and that he had the functional capabilities necessary to proceed to trial. (Id.)

Wimbley's testimony was not erroneous, and the clinical evaluation was not inaccurate. Mitchell's intellectual capacity "[does] not demonstrate . . . that [he] was incapable of knowingly and intelligently waiving his Miranda rights. It is well-established, in this circuit and many others, that mental capacity is one of many factors to be considered in the totality of the circumstances." Garner, 557 F.3d at 264. Mitchell's "conduct, speech, and appearance at the time of interrogation indicate[] that his waiver was knowing and intelligent." Id. at 265. He exhibited "no outward signs of intoxication or mental defect." United States v. Hampton, No. 08-20280, 2011 U.S.

15

Dist. LEXIS 125374, at *26 (W.D. Tenn. Oct. 28, 2011). Mitchell's waiver was knowing and voluntary.

**IV. CONCLUSION**

For the foregoing reasons, Mitchell's objections are not well taken. All findings and conclusions of the Magistrate Judge not discussed above have not been specifically objected to and are ADOPTED. The Court ADOPTS the Report and Recommendation of the Magistrate Judge and DENIES the Amended Motion to Suppress.

So ordered this 10th day of April, 2012.

/s Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE